McMILLAN ET AL., APPELLANTS, *v.* FRANK, RESPONDENT.

(No. 1,418.)

(Submitted February 10, 1904. Decided March 3, 1904.)

*Mines—Contract—Lease—Suit by Adjoining Owner—Indemnity—Pleading—Amendment—Evidence — Instructions— Harmless Error.*

1. It is not error to permit an amendment to an answer, during the progress of the trial, where the testimony necessary to support the amendment would have been admissible without it.
2. In an action by the lessees of a mining claim on an alleged agreement to pay them $8,000 to indemnify them for expenses incurred in case the lessor should compromise an adjoining owner's suit for possession of a mine, or should sell the mining claim, the lessor's testimony that he sold the claim, together with other mining property, for $2,500, was admissible.
3. Where the lessees of a mining claim showed that a suit against the lessor for possession of a mine in the claim was ordered dismissed as settled, the lessor's testimony that he knew nothing about a compromise of the suit, and did not know it was dismissed as settled, was admissible.
4. In an action against the lessor of a mining claim on an alleged agreement to indemnify the lessees for expense in working a mine thereon in case an adjoining owner's suit for possession of the mine should be compromised, or the claim sold, where the witnesses for the lessees, in the examination in chief, purported to give the entire conversation on which their claim of a contract was based, testimony in rebuttal as to whether the promises to indemnify the lessees were made dependent on finding that the apex of the mine in the lessor's claim was properly excluded.
5. Where a mine worked by lessees of a claim had its apex in an adjoining claim, the lessor was under no obligation to protect them against a suit of the adjoining owner for possession of the mine, and his promise to do so is not binding, unless supported by some other consideration than the covenants of the lease.

6.  In an action against the lessor of a mining claim on an alleged agreement
    to indemnify the lessees for expenses incurred in case an adjoining owner's
    suit should be compromised, or the mining claim sold, any error in an in-
    struction that the order of dismissal in the adjoining owner's suit was not
    final was harmless, where it was undisputed that the lessor sold the claim.
7.  Where the evidence was conflicting as to whether there was a contract, the
    jury's finding is conclusive.

*Appeal from District Court, Silver Bow County; John Lind-say, Judge.*

Action by A. A. McMillan and others against H. L. Frank. From a judgment for defendant, and from an order overruling a motion for a new trial, plaintiffs appeal. Affirmed.

### Statement of the Case.

The facts in this case, in so far as it is necessary to state them, are that in October, 1890, the respondent, Frank, leased to one Cusick, appellants' assignor, an undivided one-half interest in and to the Clark lode claim. The lease contained the usual covenant for quiet possession. In the month of June, 1891, the appellants discovered within the exterior boundaries of the Clark claim a large body of ore, and commenced to extract the same. On June 29th the Anaconda Mining Company, which then owned a claim adjoining the Clark, called the "Mountain," began an injunction suit against appellants and respondent; claiming that the ore body upon which the appellants were working was part of a vein which had its apex in the Mountain claim, and consequently was no part of the Clark. When the writ of injunction was served, the appellants and respondent had a conference, in which the situation was thoroughly discussed. Both believed that the ore body upon which the appellants were working was part of a vein which had its apex within the limits of the Clark claim. Respondent agreed with appellants that he would employ an attorney and defend the suit, and that he would exploit the Clark claim for the purpose of demonstrating that the apex in question was in fact within the boundaries of the Clark. The foregoing facts are undisputed. Appellants also alleged "that thereafter plaintiffs surrendered to defendant

the entire possession of said lode claim, and permitted defendant to use their tools and appliances with which they had been operating the said mine to make the said development work as aforesaid, and, in consideration of the matters and things above set out, and a surrender of the said lode claim, and of the use of the tools and appliances for the purpose of doing the said development work, the defendant then and there agreed that he would litigate said suit to a successful termination, and in such event, or in the event of his compromising said suit, or in the event of his selling his said undivided one-half interest in the said Clark lode claim to the said Anaconda Mining Company, he would then pay and reimburse plaintiffs for all the money and labor that they had expended and all costs and expenses that they had incurred in doing development work on the said Clark lode claim as aforesaid." They further alleged that respondent did afterward compromise the suit and sell his interest in the Clark claim to the Anaconda Mining Company, but did not repay or reimburse them for any of the expenditures made, labor done or materials furnished by them. All these allegations were fully denied by respondent. He denied that the ore body in question was a part of the Clark claim; alleged that the Anaconda Mining Company "claimed to be the owner of said vein by reason of its ownership of certain claims lying north of the said Clark lode claim, and that it also claimed that the said vein or body of ore had its apex in the vein so owned by the said company, or one of them, and that it did not have its apex in the Clark lode claim, and was not part of the latter;" alleged that the Anaconda Mining Company did not lay any claim or set up any title to the one undivided half part of the Clark claim leased by him to Cusick, or to any part of the Clark claim itself; denied that he claimed or asserted to appellants that the said vein or ore body was a part of the Clark claim, or that the apex of said vein or ore body was within the boundaries of the Clark claim; averred that he had no knowledge concerning these matters, and no information except such as was given and furnished to him by the appellants themselves. Under the statute in force at the time, the answer was deemed denied without reply.

At the trial, after appellants had closed their case in chief, the court, over appellants' objection, permitted respondent to amend his answer by adding thereto certain allegations, in which respondent, without admitting any contract between himself and appellants, averred that any and all stipulations, agreements, or transactions, if any, that may have been had between the parties relating to the matter alleged in the complaint, were "made, done and had upon the understanding and condition" that the vein in question should be shown to be a part of the Clark claim, and that it had its apex therein, and that it was not intended by the parties, or either of them, that respondent should pay anything to the appellants, or assume any liability towards them, in case the apex of the vein should be found to be in one of the claims of the Anaconda Mining Company, or outside the Clark claim; and averred, upon his information and belief, that the apex was found to be in the Mountain claim, belonging to the Anaconda Mining Company, and that the location of the Mountain claim was prior to that of the Clark.

Appellants did not attempt to show that the apex of the vein or ore body was in the Clark claim. They relied upon the contract alleged in their complaint. McGovern, one of the appellants, in relating a conversation with respondent, said, in part, "He told me he was going to fight that lawsuit right to a finish; was going to develop that lead, and show the Anaconda Company that the apex of that lead was in the Clark ground. Frank made the remark right there, in the presence of three of us, that he would pay us what we were out, in case it came to a settlement or compromise." Speaking of a conversation subsequent to the one just quoted, McGovern said: "He repeated just what he said that afternoon—that, if it ever came to a compromise with the Anaconda Company or anybody else, that we would get every dollar that we were out. I have given Frank's exact words about reimbursing us, as nearly as I can remember. Mr. Frank said he would sink a shaft right on his own ground, and show the Anaconda Company that it was his mine, and on his lead. He asked Mike Devine [one of the appellants] if he would take

charge of the development work, and he also asked for the privilege of using the shaft and tools to do this development work with. * * * Mr. McMillan and Mr. Frank and the other gentlemen present, who were not miners, all took our judgment as to what ground this lead belonged to. I told them all that I was satisfied that the lead belonged to the Clark ground, and I had nothing else to point different. I really did believe that statement at the time."

To sustain his answer, respondent introduced evidence tending to show that the apex of the ore body in question was in fact in the Mountain claim, belonging to the Anaconda Mining Company, and in his testimony denied that he had made any kind of a contract with the appellants in which he agreed to reimburse them for their time or money expended in developing the Clark lode, and discovering the ore body therein. He testified that he had expended about $3,000 in an endeavor to show that the apex of the ore body was in the Clark lode, but without avail.

The jury found a verdict in favor of respondent. A motion for a new trial was made, which was denied, and appellants then perfected this appeal.

*Messrs. McBride & McBride,* and *Mr. E. N. Harwood,* for Appellants.

Defendant's amendment to his answer, made after plaintiffs had put in their evidence in chief, was and is inconsistent with the original answer. The original answer denied that defendant had made any contract or agreement with plaintiffs. The amendment, without admitting the existence of any contract or agreement between the plaintiffs and defendant, averred that any contract or agreement, if any made by plaintiffs and defendant, was conditional upon the finding of the apex of the ore body in question in the Clark lode claim. If the original answer was true, then the amendment was untrue; and, *vice versa,* if the proposed amendment was true, then the answer was untrue. A party to an action shall not be allowed to obtain

benefits from contradictory and inconsistent allegations, deliberately made by himself in his pleadings; our Civil Code does not contemplate any such thing. A thing cannot be true and untrue at the same time, and any pleading containing allegations made by the same party, both affirming and denying a particular thing, carries falsehood upon its face. (*Losch* v. *Pickett,* 12 Pac. 822-825; *Kennett* v. *Peters,* 37 Pac. 1001; *Seattle Nat'l Bank* v. *Carter,* 45 Pac. 331-336; *Hoffman* v. *Gallatin County,* 18 Mont. 224; *Dole* v. *Burleigh,* 1 Dak. 227-234; *Newell* v. *Myendorf,* 9 Mont. 262.)

*Messrs. Stapleton & Stapleton,* for Respondent.

MR. COMMISSIONER CALLAWAY prepared the statement of the case and the opinion for the court.

1. Appellants insist that the court erred in permitting respondent to amend his answer during the progress of the trial, and say the amendment was inconsistent with the original answer, and that it raised a new issue after appellants had put in their case in chief. We think the amendment simply accentuated the defense alleged in the original answer. Respondent leased the Clark claim with a covenant that the lessee should have the quiet and peaceable possession of the same, with the right to extract the ores and minerals therefrom. If the vein of which the ore body was a portion had its apex in the Mountain claim, and not in the Clark claim, then the ore body was not a part of the Clark, and was not included in appellants' lease. That the Mountain claim has extralateral rights is not controverted by appellants. The controversy between appellants and respondent, as shown by the complaint and answer, both before and after amendment, arose upon the hypothesis that the apex of the vein or ore body was within the Clark claim. We fail to see how the inconsistency alleged to exist in the answer after amendment prejudiced appellants' case in any way. We do not think any new issue was injected by the amendment.

The testimony necessary to support the amendment would have been admissible without it.

2.   Appellants contend that the court erred in not striking out at their instance a statement made by respondent to the effect that he sold his interest in the Clark lode, together with an eighth interest in the Nettie lode, for $2,500.   We see no error in the court's ruling.   The appellants based their action upon an alleged promise made by respondent to pay them over $8,000 in case he should compromise the suit or sell the Clark claim.   He testified that he actually did sell the Clark claim, together with an interest in another, for $2,500.   This was a circumstance for the jury to consider in arriving at its verdict.

3.   Appellants showed by a journal entry of the district court dated May 16, 1894, that the suit brought by the Anaconda Mining Company had been ordered dismissed as settled.   Respondent testified that he did not know anything about a compromise of the suit, and did not know it was dismissed as settled.   Appellants moved to strike out this testimony as incompetent, on the ground that the action of a person in court through his attorney is his action, and the client is bound by it.   The court overruled the objection.   Its action in so doing was not wrong.   The journal entry in question does not show that respondent or his attorney had anything to do with it.   If respondent had not interposed an answer asking for affirmative relief—and there is no showing that any answer was filed—the Anaconda Mining Company had the right to dismiss the action, even against respondent's consent.

4.   After respondent had closed his case, appellants called the witness McGovern to the stand, and asked him this question: "State whether or not Mr. Frank made the promises which you have testified to as to reimbursement of lessees for the labor and expenditures they made on the Clark lode, dependent upon the fact of his afterward discovering the apex of the ore body which the lessees discovered upon the Clark claim?" This was objected to as not rebuttal testimony, for the reason that what took

place between the appellants and respondent had been fully gone into in the examination in chief of the same witness. The evidence offered was a mere repetition. This witness, as shown by the statement of facts, testified that he had given the exact language of respondent as to the promise of reimbursement. All of appellants' witnesses who testified concerning the conversations with Frank were examined minutely as to such conversations, both upon direct and cross-examination, and assumed to give all of the testimony which they remembered, in detail. The offered proof, therefore, was properly excluded.

5. Appellants urge that the court erred in giving instruction No. 9, in which the jury was told that respondent was under no legal obligation to protect appellants against the suit of the Anaconda Mining Company; that a promise on the part of respondent to protect the appellants or to pay them could not be binding unless based upon some consideration other than the covenants contained in the lease. This instruction was given upon the assumption that the apex of the ore body was within the Mountain claim. Had there been any controversy upon that point, it would have been error to so instruct the jury. That the apex was within the Mountain claim is undisputed. Appellants did not deny that such was the fact, either in their case in chief or in rebuttal. Respondent, on the other hand, produced much testimony to prove it. If, as we have suggested above, the ore body was not a part of the Clark claim, but was a part of the Mountain claim, neither respondent nor his lessees were entitled to it, and respondent was under no obligation to defend the suit brough by the Anaconda Mining Company. This matter was fully covered by instruction No. 16, which appellants have not attacked in their argument.

6. Appellants urge that it was error for the court to tell the jury, in instruction No. 20, that the minute order dismissing the action brought by the Anaconda Mining Company was not conclusive and did not amount to a final or absolute dismissal of the suit, because it was not followed by any other order or judgment. We regard this instruction as immaterial and harm-

less.    Appellants had shown that the respondent sold the property in question to one Haggin on January 25, 1894, some months prior to the time the minute entry of dismissal was made, and that Haggin thereafter transferred it to the Anaconda Mining Company.    Respondent himself testified that he sold it to Haggin.    Whether the suit was technically dismissed did not matter.    The facts were before the jury.    Upon appellants' theory of the case, respondent was liable if he sold the Clark lode to any one.

7.    Appellants take exception to a number of other instructions given to the jury, but, after giving due attention to their argument pertinent thereto, we do not find that they have pointed out any error therein.

8.    On the question whether there was a contract or agreement between appellants and respondent with respect to the subject-matter of this action there was a substantial conflict of testimony.    The jury found for respondent, and, under the settled rule, its finding thereon is conclusive.

For the foregoing reasons, we are of the opinion that the judgment and order should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.